**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JESSICA GISINGER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PATRIARCH PARTNERS, and LYNN TILTON,<br><br>Defendants. | No. 15-cv-1564<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF WARN ACT, 29 U.S.C. §2101, ET SEQ**<br><br>**JURY TRIAL DEMANDED** |

       Plaintiff Jessica Gisinger ("Plaintiff"), by her undersigned counsel, alleges the following upon personal knowledge as to her own acts and observations, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

       1.     This is a class action under the federal WARN Act, 29 U.S.C. §2101, *et seq.*, and the New York WARN Act, against Patriarch Partners, LLC ("Patriarch") and Lynn Tilton ("Tilton," together with Patriarch, "Defendants") on behalf of all employees (the "Class") of TransCare Corporation and affiliated companies (collectively, "TransCare") for failure to provide 60 days' notice of a mass layoff as required by the WARN Act.  Defendants terminated all employees of TransCare without any advance notice (the "Termination").  Patriarch's website states that TransCare employed 2,700 full and part time employees.  All but a few of these employees' employment was terminated on or shortly after TransCare's February 24, 2016 Chapter 7 bankruptcy filing.

       2.     Defendants herein did not file for bankruptcy.  Defendants—a private equity firm that claimed TransCare as part of its "portfolio" and its CEO who functioned as the single-

member board of directors of TransCare—are employers of Plaintiff and the Class within the meaning of the WARN Act by, among other things, their exercise of control over Plaintiffs and the Class through their decision to file for bankruptcy and terminate all or substantially all TransCare employees.

3.    Plaintiff and all similarly situated employees seek to recover 60 days wages and benefits, pursuant to the WARN Act, from Defendants.

**JURISDICTION AND VENUE**

4.    This Court has jurisdiction over Plaintiffs' WARN Act claims pursuant to 28 U.S.C. §1331.  This Court has jurisdiction over Plaintiffs' New York claims pursuant to 28 U.S.C. §1367.

5.    Venue is proper in this District because Defendants reside in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, including but not limited to Defendants' decision to terminate TransCare's employees.

**THE PARTIES**

6.    Plaintiff Jessica Gisinger is a citizen of the State of New Jersey.  Plaintiff was employed by TransCare and/or Defendants from December, 2006 until the Termination.  At the time of the Termination, Plaintiff worked as a Business Intelligence Analyst in TransCare's Brooklyn, New York office.  In her position as Business Intelligence Analyst, Plaintiff was present at, and has personal knowledge of, many of the meetings that took place among Defendants' executives at which matters concerning TransCare's bankruptcy, and Defendants' decision-making process, were discussed.  For certain periods toward the end of TransCare's existence, Plaintiff Gisinger worked at Patriarch's offices assisting in various issues related to the

2

closing of TransCare.  Plaintiff did not receive 60 days' notice, or any advance notice at all, of the Termination.

7.      Patriarch Partners, LLC, is an investment firm with investments in more than 75 companies across 14 industry sectors.  Founded by Defendant Lynn Tilton in 2000, Patriarch's website claims that it was built upon a proprietary patented financial model designed to manage and monetize the distressed portfolios of financial institutions.  Patriarch claimed TransCare as a property in its "portfolio" and was the sole owner or held the vast majority of TransCare's equity.  Several of Patriarch's executive employees were directly involved in the decision to commence the Termination.   Specifically, Patriarch's Investment and Credit Professional, Michael Greenberg, Managing Director, Randall Jones, Managing Director, Jean-Luc Pelissier, and Patriarch's in-house counsel whose title is "Senior Director, Legal" were involved with that decision.  Some or all of these executives were involved in TransCare's financial and decision making processes as early as 2014.

8.      Defendant Lynn Tilton is the founder of Patriarch and currently serves as its CEO. She was directly involved in the decision to implement the Termination.

**TRANSCARE**

9.      TransCare Corporation, according to its website, provided "a full range of medical transportation solutions in an innovative, reliable and cost-effective manner that is unsurpassed in the industry."  TransCare also provided ambulance service in conjunction with various fire departments.  TransCare's corporate headquarters is located in Brooklyn, New York. TransCare was a contractual provider to New York City's Access-A-Ride program, for people with disabilities who are unable to use the subways or city buses for some or all of their trips. TransCare employed between 1,700 and 2,700 employees in the Eastern United States including

in New York City, New York's Hudson Valley region, Pennsylvania, Delaware, Maryland, New Jersey, Virginia, and Washington, D.C.

10.     TransCare has not been named as a defendant herein due to its February 24, 2016 Chapter 7 bankruptcy filing and the resulting automatic stay of claims.

## CLASS ACTION ALLEGATIONS

11.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and 29 U.S.C. §2104(a)(5) on behalf of the following class of employees (the "Class"):

> All persons in the United States who were employed in any position by TransCare or any affiliate of subsidiary thereof, for at least thirty days prior to, and on the date of, the Termination and were terminated without cause.

And the New York Sub-Class (the "Sub-Class"):

> All persons who were employed in any position by TransCare or any affiliate or subsidiary thereof, in the State of New York for at least thirty days prior to, and on the date of, the Termination and were terminated without cause.

12.     Members of the Class are so numerous that joinder of all members would be impracticable.  Plaintiff estimates that the Class contains as many as 2,700 Class members and the Sub-Class contains hundreds, or thousands, of employees.

13.     Questions of law and fact are common to all the members of the Class and Sub-Class that predominate over any questions affecting only individual members, including but not limited to:

> a.     Whether Defendants were the employers of the Class members;
>
> b.     Whether Defendants terminated the Class members; and
>
> c.     Whether the Termination was without cause was in violation of the WARN Act for, among other things, failing to provide the Class members with 60 days' advance notice of the Termination (or 90 days for the Sub-Class);

d.      The amount by which Plaintiffs and the Class/Sub-Class were damaged.

14.     The claims of Plaintiff are typical of the claims of the members of the Class and Sub-Class.   Plaintiff has no interests antagonistic to those of the Class or Sub-Class, and Defendants have no defenses unique to Plaintiff.

15.     Plaintiff will protect the interests of the Class and Sub-Class fairly and adequately, and Plaintiff has retained attorneys experienced in class action litigation.

16.     A class action is superior to all other available methods for this controversy because:

a.      The prosecution of separate actions by the members of the Class or Sub-Class would create a risk of adjudications with respect to individual members of the Class or Sub-Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

b.      The prosecution of separate actions by the members of the Class or Sub-Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class or Sub-Class, which would establish incompatible standards of conduct for defendant;

c.      Defendants acted or refused to act on grounds generally applicable to the Class and Sub-Class; and questions of law and fact common to members of the Class and Sub-Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## SUBSTANTIVE ALLEGATIONS

17.     On or about February 24, 2016, TransCare filed for Chapter 7 bankruptcy protection.  As a result, and immediately thereafter, Plaintiff and all or substantially all of the Class and Sub-Class members' employment by TransCare was terminated.

18.     Plaintiff and the Class/Sub-Class members did not receive any advance, written notice of the Termination from TransCare or Defendants and did not receive written notice after the Termination.

19.     Defendants and their agents were centrally involved in the decision to implement the Termination.  Defendant Lynn Tilton was the sole member of TransCare's board of directors and was responsible for all financial and operational decisions made by TransCare, including the Termination.   Patriarch's Investment and Credit Professional, Michael Greenberg, Managing Director, Randall Jones, Managing Director, Jean-Luc Pelissier, and Patriarch's in-house counsel were also the contributors or the sole decision makers along with Ms. Tilton in implementing the Termination.

20.     In addition to serving as TransCare's board of directors, Defendant Lynn Tilton is also the founder, CEO, and public face of Patriarch.  The two entities are so closely affiliated that TransCare's website contains a substantially similar biography of Ms. Tilton as the one found on Patriarch's website.  TransCare's biography does not mention TransCare and states, among other things: "Led by Lynn Tilton, the CEO and Principal, Patriarch Partners LLC is a private equity firm and holding company managing 75 companies across 14 industry sectors with revenues in excess of $8 billion. Founded by Ms. Tilton in 2000, Patriarch was built upon a proprietary patented financial model designed to manage and monetize the distressed portfolios of financial institutions."

21.     TransCare was financially dependent on Patriarch, and received frequent funding from Patriarch to keep its operations running until the Termination.

22.     TransCare is owned by Patriarch and is listed on Patriarch's website as part of Patriarch's "portfolio."  Patriarch is the sole shareholder of TransCare or owns the vast majority of shares, such that Patriarch's financial decisions necessarily exert control over TransCare and all of its employees.  As TransCare's finances were deteriorating, Patriarch's executives insisted that its funds be commingled; one such instance was that Patriarch demanded that TransCare make interest payments to Patriarch before paying required payroll taxes.

23.     Lynn Tilton was a common director/officer of Patriarch and TransCare, and Patriarch's executive employees described herein, by virtue of their decision to commence the Termination and their involvement in TransCare's financial affairs before the Termination, were agents of both Patriarch and TransCare.  The Termination was ordered by Defendants and their agents at Patriarch.

24.     Lynn Tilton, Patriarch, and Patriarch's executives received regular, confidential, insider reports and executive minutes concerning TransCare's financial health and based their decision to implement the Termination on those reports and executive minutes.  Patriarch hosted TransCare's employees at Patriarch's offices in order for those employees to assist Patriarch in planning for the Termination.

25.     Defendants excercised *de facto* control over the Class members by, among other things, their implementation of the Termination.

26.     As a result of the Termination, the Class members will lose wages and important benefits including health insurance, 401(k) contributions, health insurance and/or COBRA

coverage, unemployment benefits, unpaid vacation time or sick time, and other financial benefits.

## COUNT I

**Violation of the WARN Act, 29 U.S.C. §2014**
**(Brought on Behalf of Plaintiff and the Class)**

27.     Plaintiff incorporates and re-alleges all of the preceding paragraphs as if they were fully set forth herein.

28.     At all relevant times, Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

29.     At all relevant times, Defendants were an "employer" as that term is defined in 29 U.S.C. §2101(a)(1) and 20 C.F.R. §639(a), and exercised *de facto* control over Plaintiff and the Class by ordering the Termination.

30.     On or about February 24, 2016, Defendants determined that TransCare would file for bankruptcy, thus causing the Termination.

31.     The Termination resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(2) for at least fifty of Defendants' employees, excluding "part-time employees" as that term is defined by 29 U.S.C. §2101(a)(8).

32.     Plaintiff and the Class were terminated by Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the Termination ordered by Defendants.

33.     Plaintiff and the Class members are "affected employees" of Defendants within the meaning of 29 U.S.C. §21010(a)(5).

34.     Defendants were required by the WARN Act to give Plaintiff and the Class members at least 60 days' advance written notice of their terminations.  Defendants failed to give that notice.

35.     Plaintiff and the Class members are "aggrieved employees" of Defendants as that term is defined in 29 U.S.C. §2104(a)(7).

36.     Defendants failed to pay Plaintiff and the Class their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation, and failed to contribute to 401(k) plans, employee benefit plans including COBRA coverage, and other benefit plans after the Termination.

37.     Plaintiff and the Class are entitled to damages, attorneys' fees, and costs of bringing suit as a result.

## COUNT II

**Violation of the New York WARN Act**
**(Brought on Behalf of Plaintiffs and the New York Sub-Class)**

38.     Plaintiff incorporates and re-alleges all of the preceding paragraphs as if they were fully set forth herein.

39.     Defendants are employers within the meaning of the New York WARN Act.

40.     Plaintiff and the New York Sub-Class members are "affected employees" within the meaning of the New York WARN Act.

41.     Plaintiff and the New York Sub-Class members suffered an "employment loss" within the meaning of the New York WARN Act as a result of the Termination.

42.     The Termination was a "mass layoff" within the meaning of the New York WARN Act.

43.     Defendants failed to provide Plaintiff and the New York Sub-Class 90 days' notice of the Termination.

44.     Defendants failed to pay Plaintiff and the New York Sub-Class their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation, and failed to contribute to 401(k) plans, employee benefit plans including COBRA coverage, and other benefit plans after the Termination.

45.     Plaintiff and the New York Sub-Class are entitled to damages, attorneys' fees, and costs of bringing suit as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant Plaintiff and the Class the following relief:

A.     An order certifying this case as a class action under Federal Rule of Civil Procedure 23 (a) and (b)(3) for the classes of employees described herein, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B.     Award Plaintiff and the Class all statutory damages, compensatory damages, punitive damages, liquidated damages, pre-judgment interest, and post-judgment interest, statutory damages, and any other damages that may be just and proper, unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, accrued sick pay, pension and 401(k) benefits, and COBRA benefits, for 60 days, that would have been covered and paid had the Termination not occurred;

C.     Award Plaintiff and the Class their reasonable attorneys' fees, costs and expenses as authorized by law; and

     D.     Grant in favor of Plaintiff and the Class and Sub-Class such other relief as may be just and proper.

**<u>JURY DEMAND</u>**

     Plaintiff hereby demands a trial by jury.

DATED:  February 29, 2016        **GARDY & NOTIS, LLP**

                                          By: *s/Orin Kurtz*

                                          Mark C. Gardy
                                          Orin Kurtz
                                          Tower 56
                                          126 East 56th Street, 8th Floor
                                          New York, New York 10022
                                          Tel: (212) 905-0509
                                          Fax: (212) 905-0508
                                          mgardy@gardylaw.com
                                          okurtz@gardylaw.com

                                          *Attorneys for Plaintiffs*

11
