UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSICA GISINGER, Individually and On Behalf
of All Others Similarly Situated

                                        Plaintiff,          **OPINION AND ORDER**

              – against –                                   16 Civ. 1564 (ER)

PATRIACH PARTNERS and LYNN TILTON,

                                        Defendants.

DALIBEL GARCIA, Individually and On Behalf
of All Others Similarly Situated

                                        Plaintiff,          16 Civ. 1596 (ER)

              – against –

PATRIACH PARTNERS, LLC, and XYZ
ENTITIES 1-10,

                                        Defendants.

WARREN EISENSTADT, Individually and On Behalf
of All Others Similarly Situated                            16 Civ. 2831 (ER)

                                        Plaintiff,

              – against –

PATRIACH PARTNERS, LLC, and XYZ
ENTITIES 1-10,

                                        Defendants.

Ramos, D.J.:

  In February and March 2016, three class actions were brought under the federal and state Worker Adjustment and Retraining Notification ("WARN") Act against Defendants Patriarch Partners, LLC, and its affiliates (together, "Patriarch") and Lynn Tilton[1] alleging that they fired their employees without the required 60-day notice.

  Pending before the Court are Plaintiffs' motion to consolidate the cases and Defendants' cross motion to refer the cases to Bankruptcy Court. The three Plaintiffs are Jessica Gisinger, Dalibel Garcia, and Warren Eisenstadt.

  For the reasons set forth below, Plaintiffs' motion is DENIED and Defendants' motion is GRANTED.

## I.  Background

### A.  TransCare Corporation

  TransCare Corporation and its affiliates (collectively, "TransCare") operated an emergency medical transportation business. *See* Compl. ¶ 9.[2] Ginsinger, Garcia, and Eisenstadt were all TransCare employees. Patriarch, an investment firm founded by Tilton, was the sole owner or held a vast majority of TransCare's equity. *Id.* at ¶ 7. In addition to being CEO of Patriarch, Tilton was also the sole member of TransCare's Board of Directors and was responsible for "all financial and operational decisions made by TransCare." *Id.* at ¶¶ 8, 19.

  On February 24, 2016, TransCare filed for Chapter 7 bankruptcy. *Id.* at ¶ 17. As a result, and immediately thereafter, Plaintiffs and substantially all of TransCare's employees were terminated. *Id.* Plaintiffs allege that they did not receive any advance, written notice of the

---

[1] Only the *Gisinger* action names Tilton as a defendant.

[2] All citations to "Compl." refer to the Complaint filed in the *Gisinger* action. (Doc. 1).

termination from either TransCare or the various defendants.  *Id.* at ¶ 18.  Plaintiffs also argue that several of Patriarch's executive employees, including Tilton, were involved in TransCare's financial and decision making processes and were "directly involved" in the termination decision.  *Id.* at ¶¶ 2, 7.

### B.  Legal Proceedings

TransCare filed its bankruptcy petition on February 24, 2016.  *In re TransCare Corp.*, et al., Case No. 6-10407-SMB (Bankr. S.D.N.Y.); Compl. ¶ 17.  In the petition, TransCare represented – by checking the appropriate boxes – that "[a]fter any administrative expenses are paid, no funds will be available for distribution to unsecured creditors."  Declaration of Kathleen McKenna in Support of Defendants' Motion ("McKenna Decl.") (Doc. 30), Ex. B at 3.  It estimated that its number of creditors was between 200–999, that its estimated assets totaled between approximately $10,000,001–$50 million, and that it had between approximately $50,000,001–$100 million of liabilities.  *Id.* at 4.

On February 29, 2016, Gisinger and Eisenstadt filed class actions in the Southern District and Eastern District of New York, respectively, alleging violations of the federal and New York Warn Act.  *See id.* Exs. D & F.  Gisinger named Patriarch and Tilton as defendants; Eisenstadt named only Patriarch and its unknown affiliates.  *Id.*  Gisinger alleges that Tilton and Patriarch exercised *de facto* control over Plaintiff and were employers as defined by both the federal and New York WARN Act.  *Id.* Ex. D, at 7-8.  Similarly, Eisenstadt contends that Patriarch, and its affiliates, were part of a "single business enterprise" and thus was an employer for the purposes of the statutes.  *Id.* Ex. F, at 13.  Eisenstadt also asserts a breach of contract claim for lost wages pursuant to New York Business Corporation Law §630(a) and a *quantum meruit* claim.  *Id.* at 16-17.  Two days later, on March 2, 2016, Garcia filed a class action in the Southern District of

3

New York, almost identical to the suit filed by Eisenstadt.  *See* McKenna Decl. Ex. E.  The Eisenstadt matter was transferred to the Southern District on April 20, 2016.

Meanwhile on March 1, 2016, Shameeka Ien, another former TransCare employee filed an adversary proceeding, on behalf of herself and similarly situated employees, before the Bankruptcy Court asserting federal and New York WARN Act claims and claims for unpaid wages under New York, Pennsylvania, and Maryland law ("Ien Adversary proceeding").  *Ien v. TransCare Corp.,* Adv. Case No. 16-1033- SMB (Bankr. S.D.N.Y.); *See also* McKenna Decl. Ex. C.  In addition to TransCare, Ien named Patriarch, Tilton, and several of Patriarch's subsidiaries (together, "Ien Defendants") as defendants and alleged that TransCare and the Ien Defendants were part of a "single employer group," and that Tilton and Patriarch exercised *de facto* control over TransCare.  *Id.* at 5-6.  Ien contends that the class is entitled to "administrative priority status" pursuant to Bankruptcy Code § 503(b)(1)(A) or, alternatively, wage priority status, under 11 U.S.C. § 507(a)(4) and (5).  *Id.* at 3.

On April 1, 2016, three other former TransCare employees, filed yet another class action in Bankruptcy Court alleging federal and New York WARN Act violations against TransCare, Patriarch, and their respective affiliates.  *See In re TransCare Corp.*, Adv. Proc. Case No. 16-10407-SMB; McKenna Decl. H.  However, on May 23, 2016, the Bankruptcy Court dismissed the action, finding that it was "largely duplicative" of the Ien Complaint and that consolidation would not be beneficial.  *In re TransCare Corp*, 552 B.R. 69, 78 (Bankr. S.D.N.Y. 2016); *see also* McKenna Decl. Ex. I.  Additionally, the Bankruptcy Court designated Outten & Golden, LLP as interim class counsel.  *Id.*  Defendants claim that plaintiff's counsel in the Ien Adversary proceeding and counsel for Patriarch and Tilton have already agreed to a discovery conference pursuant to Rule 7026(f) of the Federal Rules of Bankruptcy and the second pretrial conference

was scheduled for July 19, 2016.  Reply Memorandum in Support of Defendants' Motion to

Enforce Standing Order of Reference ("Def. Reply") (Doc. 40), at 9.

## II.  Procedural History

On May 3, 2016, this Court granted Plaintiffs leave to file a motion to consolidate the

*Gisinger*, *Garcia*, and *Eisenstadt* actions and appoint interim co-class counsel, which they filed

on May 12, 2016 (Doc. 21).  On June 2, 2016, Defendants filed a cross motion to enforce the

standing order of reference automatically referring the actions to Bankruptcy Court.  (Doc. 28).

On September 20, 2016, Plaintiffs informed this Court that they had filed a motion to intervene

in the Ien Adversary proceeding for the "limited purpose of moving the Bankruptcy Court to

defer consideration of any class certification motion until such time as this Court has ruled" on

Defendants' motion to refer.  (Doc. 54).  The Bankruptcy Court denied Plaintiffs' motion.  On

October 14, 2016, by a Proposed Order to Show Cause, Plaintiffs sought to defer class

certification in the Bankruptcy Court proceeding pending this Court's decision on Defendants'

referral motion.  (Doc. 58).

## III.  Discussion

### A.  Automatic Referral

Pursuant to Section 157(a) of the Bankruptcy Code, "[e]ach district court may provide

that . . . any or all proceedings . . . related to a case under title 11 shall be referred to the

bankruptcy judges for the district."  28 U.S.C. § 157(a).  On January 31, 2012, then-Chief Judge

Loretta A. Preska issued an "Amended Standing Order of Reference" providing, in pertinent

part, that "any and all proceedings arising under title 11 or arising in or related to a case under

title 11 are referred to the bankruptcy judges for this district."  McKenna Decl. Ex. A.  Thus,

proceedings that are "related to" a Title 11 case are "automatically referred to the bankruptcy

court.  *Korea Exch. Bank v. Kirtie Regan, Inc.*, No. 05 Civ. 8597 (WHP), 2006 WL 2034681, at

*1 (S.D.N.Y. July 20, 2006) (listing cases).  Section 157 also defines the bankruptcy court's

jurisdiction, authorizing bankruptcy judges to enter orders and judgments in "core proceedings,"

but only allowing bankruptcy judges to hear "non-core" proceedings if they are "related to" a

case under title 11.  28 U.S.C. § 157(b) & (c); *see also Pan Am. World Airways, Inc. v.

Evergreen Int'l Airlines, Inc.*, 132 B. R. 4, 7 (S.D.N.Y. 1991).

      The bankruptcy court's "related to" jurisdiction is broadly defined.  "An action is related

to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of

action . . .  and which in any way impacts upon the handling and administration of the bankrupt

estate."  *Tortogs, Inc. v. Ins. Comp. of N. Am.*, No. 93 Civ. 1739 (LMM), 1993 WL 339269, at *3

(S.D.N.Y. Sept. 1, 1993) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 992 (3d Cir. 1984)).  In

other words, a case is related to a pending bankruptcy proceeding when its outcome might have

any "conceivable effect" on the bankrupt estate.  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110,

114 (2d Cir. 1992).

      None of the parties contend that the instant cases arise under title 11.  Rather, Defendants

argue that the cases before this Court are "related to" both the Chapter 7 proceeding and the Ien

Adversary proceeding in Bankruptcy Court.  Defendants' Memorandum of Law in Support of

Defendants' Motion to Enforce Standing Order of Reference ("Def. Memo.") (Doc. 29), at 6-7.

With respect to the Chapter 7 proceeding, Defendants argue that Plaintiffs' claims against Tilton

and Patriarch will impact the assets available to TransCare's creditors because if Tilton and

Partriarch are found liable in the district court proceeding, they will assert indemnification,

contribution, and/or subrogation claims against TransCare's estate.  *See id.*  Though they do not

specifically assert the basis for Patriarch's claims against TransCare, Defendants contend that

according to TransCare's bylaws, Tilton must be indemnified by TransCare.  *See id.* at 8; McKenna Decl. ¶ 6.  With respect to the Ien Adversary proceeding, Defendants claim that this Court will have to determine the validity of the WARN Act claim, which may have collateral estoppel effect in Bankruptcy Court and would thus necessarily impact the administration of the bankruptcy estate.  Def. Memo. at 8-9.

Plaintiffs disagree and argue that Defendants' indemnification, contribution, or subrogation claim is "hypothetical" and is therefore insufficient to establish "related to" jurisdiction.  Plaintiffs' Memorandum of Law in Further Support of Motion ("Pl. Opp.") (Doc. 37), at 7-8.  Plaintiffs also contend that Tilton does not have a viable indemnification claim because she is being sued in her individual capacity, and even if she does, indemnification would have no conceivable effect on TransCare's estate because the bankruptcy petition projects that the entire estate will go to secured creditors, not unsecured creditors, *i.e.* TransCare's former employees.  *See id.*

To support their claims, Plaintiffs primarily rely on *Gen. Elec. Capital Corp. v. Por-Fac Coop., Inc.*, No. 01 Civ. 10215 (LTS), 2002 WL 1300054 (S.D.N.Y. June 11, 2002), in which the district court held that a third party suit was not "related to" the bankruptcy case and thus did not refer the suit to Bankruptcy Court.  2002 WL 1300054, at * 2.  Although the defendants had indemnification and contribution claims against the debtor, the Court held that "the [r]esolution of the rights of Plaintiff and Defendants *inter se* [did] not require resolution of the validity or proper scope of any claims by Defendants against Debtor, and [would] have no direct effect on the bankruptcy estate."  *Id.*

The Court disagrees with Plaintiffs.  Importantly, the Court in *General Electric* did find that the outcome of the litigation could have ramifications that could conceivably have an effect

on estate administration.  *Id.*  However, it held that given the facts of the particular case, it was insufficient to warrant a finding of "related to" jurisdiction.  *Id.* at 2-3.  In that case, the debtor defaulted on a lease assigned to it by the plaintiff.  *Id.* at 1.  After the debtor filed for bankruptcy, the plaintiff asserted claims of "fraud and misuse of the corporate form" against the non-debtor defendants.  *Id.*  Here, however, the actions are "inextricably intertwined" by virtue of the identical facts and assertions.  Def. Reply at 5.  Not only does Tilton, as the sole member of TransCare's Board of Directors, have a potentially viable claim for indemnification against TransCare, *see In re Worldcom, Inc. Sec. Litig.*, 293 B.R. 308, 318 (S.D.N.Y. 2003) (recognizing the holding in *Gen. Elec.* but noting that courts in this district have "generally found" related to jurisdiction "where there is a 'reasonable basis'" for an indemnification claim), but also both Tilton and Patriarch are named defendants in the Ien Adversary proceeding, in which Ien asserts almost identical claims to the instant suits, on behalf of a similarly defined class.  Allowing the instant suits to proceed in tandem, at best, estops either court from determining liability with respect to Tilton and Patriarch and potentially affects the Bankruptcy Court's administration of TransCare's estate, and at worst, runs the risk of inconsistent adjudications.

Further, Plaintiffs' claim that the instant actions will have no conceivable effect on TransCare's estate because "TransCare's amended bankruptcy petition unambiguously projects that the entire estate will go secured creditors" is misleading.  The trustee in the bankruptcy proceeding is responsible for examining "potential sources of recovery" and creating value that can result in a distribution to unsecured creditors.  Def. Reply at 3.  At this stage, it is improper for Plaintiffs to predict that no recovery will be possible for the former employees.  This is especially the case here because Plaintiffs note that the trustee has already sold off foreclosed

property and generated a percentage –albeit small – reserved for employee wages.  *See* Pl. Opp. at 5-6.

Accordingly, the Court finds that the instant cases are related to the proceedings before the Bankruptcy Court and should be automatically referred pursuant to the Standing Order of Reference.

### B.  Mandatory Withdrawal

Plaintiffs argue that even if the instant actions are automatically referred to the Bankruptcy Court, they must be immediately withdrawn to this Court pursuant to 28 U.S.C. § 157(d).  Section 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

*Id.*  The first sentence provides for "permissive" withdrawal, or withdrawal for cause, and the second sentence provides for "mandatory" withdrawal.  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 454 B.R. 307, 311 (S.D.N.Y. 2011).  Mandatory withdrawal is appropriate only "where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding."  *Picard v. Flinn Inv., LLC*, 463 B.R. 280, 283 (S.D.N.Y. 2011) (quoting *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990)).  "Judicial consideration is 'substantial and material' when the case requires the bankruptcy judge to make a significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes."  *Bonny Gas Transport Ltd v. O.W. Bunker Germany GmbH*, No. 14 Civ. 9542 (VEC), 2016 WL 5369615, at *2 (S.D.N.Y. Apr. 27, 2016)

(quoting *Madoff*, 454 B.R. at 312).  Plaintiffs contend that the determination of whether

TransCare, Tilton, and Patriarch are employers for purposes of the WARN Act is "novel" and

would require substantial consideration of non-Bankruptcy Code federal statutes.  Pl. Opp. at

11-12.

      Here, the Court finds that mandatory withdrawal is inappropriate.  Though Plaintiffs are

correct in noting that this proceeding does not include any claims under the Bankruptcy Code,

Plaintiffs' WARN Act claims are not particularly complex and will require only simple

application of the WARN Act by the Bankruptcy Court.  Indeed, a review of cases in this district

suggests that bankruptcy courts routinely assess WARN Act liability.  *See, e.g.*, *In re Dewey &*

*LeBoeuf LLP*, 487 B.R. 169, 175 (Bankr. S.D.N.Y. 2013) (assessing whether plaintiff's alleged

sufficient facts to determine whether defendants were plaintiff's employer at the motion to

dismiss stage); *In re MF Glob. Holdings Ltd.*, 481 B.R. 268, 281 (Bankr. S.D.N.Y. 2012)

(finding that certain defendants were not "employers" pursuant to federal WARN Act and New

York WARN Act).

### C. Permissive Withdrawal

      Plaintiffs also argue that permissive withdrawal is appropriate here.  They claim that

because Defendants have not waived their right to an Article III proceeding, referral to

bankruptcy court "creates another layer of duplicative proceedings and unnecessary *de novo*

review" by the district court.  *See* 28 U.S.C. § 157(c) (noting that a bankruptcy judge may hear a

non-core proceeding related to a case under title 11 but can only "submit proposed findings of

fact and conclusions of law to the district court," which a district judge reviews *de novo* before

entering a final order or judgment).  Plaintiffs add that nothing would be gained by "entangling

WARN Act claims with the claims against TransCare because the bankruptcy will not likely

result in any payment on unsecured judgments resulting from WARN Act claims."  Pl. Opp. 14.

Defendants argue that uniformity of bankruptcy administration is better served by having the

Bankruptcy Court issue one decision in the bankruptcy, adversary hearing, and the instant cases.

The Court agrees with the Defendants.  When determining if permissive withdrawal is

appropriate for non-core proceedings, courts must consider several factors, including whether

withdrawal promotes an efficient use of judicial resources, would result in undue delay, and

allows for uniformity of bankruptcy administration.  *See In re Northeast Indus. Dev. Corp.*, 511

B.R. 51, 53 (S.D.N.Y. 2014).  Here, the factors militate in favor of allowing the Bankruptcy

Court to hear the instant cases.  The Ien Adversary proceeding, already before the Bankruptcy

Court, includes all of the claims brought forth by Plaintiffs in the instant cases and also names

TransCare, Tilton, and Patriarch as defendants.  Importantly, as this Court previously noted,

referral to the Bankruptcy Court will prevent inconsistent adjudications in parallel actions.  *See,*

*e.g.*, *Cf In re Pan Am Corp.*, 163 B.R. 41, 43-44 (S.D.N.Y. 1993).

Plaintiffs' argument that referral should be denied because the district court may have to

review the bankruptcy court's findings *de novo* is unavailing.  While Plaintiffs correctly note that

Tilton and Patriarch have not waived their right to an Article III proceeding, "it is equally true

that the bankruptcy judge has a better vantage point from which to make proposed findings of

fact and conclusions of law in the first instance."  *Hickox*, 224 B.R. at 539-40 (internal

quotations omitted).  Further, the Court finds that withdrawal at this early stage due to Plaintiffs'

jury trial demand is premature.  *See, e.g. In re Enron Corp.*, 317 B.R. 232, 235 (S.D.N.Y. 2004)

("This case is still in the early stages and because of the large number of defendants and

unresolved pre-trial matters, especially discovery, one can only speculate when it will proceed to

trial, if at all."); *Schneider v. Riddick (In re Formica Corp.)*, 305 B.R. 147, 150 (S.D.N.Y.2004)

11

("While the plaintiff has a right to a jury trial, such a right does not compel withdrawing the reference until the case is ready to proceed to trial.").

Because the Court has found that referral of the instant cases to Bankruptcy Court is appropriate, Plaintiffs' motion to consolidate the instant cases is moot.

## IV.    Conclusion

For the reasons set forth above, Plaintiffs' motion is DENIED as moot and Defendants' motion to refer is GRANTED.  Accordingly, Plaintiffs' Proposed Order to Show Cause is DENIED as moot and all conferences are cancelled.  Pursuant to the Standing Order, this matter is automatically referred to the Bankruptcy Court and assigned to the Honorable Stuart M. Bernstein, U.S.B.J., United States Bankruptcy Court, who is presiding in, *In re Transcare*, Case No. 16-10407(SMB) and Adv. Proc. No. 16-1033(SMB).

The Clerk of the Court is respectfully directed to docket this Opinion & Order in all three related cases, terminate the respective motions:  (i) 16 Civ. 1564, Docs. 21 & 28; (ii) 16 Civ. 1596, Doc. 18; and (iii) 16 Civ. 2831, Doc. 18, and transfer the actions.

It is SO ORDERED.

Dated:    October 18, 2016
          New York, New York

Edgardo Ramos, U.S.D.J.

12